No. 22-16415

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

MOLLY BROWN, KEPPIE MOORE AND AUDREY SHEFFLER, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

MADISON REED, INC.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of California, San Francisco Division
The Honorable William H. Orrick, District Judge
District Court No. 3:21-cv-01233-WHO

---

## BRIEF OF PLAINTIFFS-APPELLANTS MOLLY BROWN,
## KEPPIE MOORE AND AUDREY SHEFFLER

---

CARLOS F. RAMIREZ
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *cramirez@reesellp.com*

*Counsel for Plaintiffs-Appellants and the Proposed Class*
(Additional counsel listed on signature page)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................ii

INTRODUCTION ...................................................................... 1

JURISDICTIONAL STATEMENT ................................................ 5

QUESTIONS PRESENTED ........................................................ 6

STATEMENT OF THE CASE ..................................................... 7

I.     Relevant Facts ................................................................ 7

II.    Procedural History......................................................... 18

ARGUMENT........................................................................... 26

I.     The Standard of Review Is De Novo ............................... 26

II.    The District Court Did Not Have License to Choose Which Facts to Believe........................................................................ 26

III.   Plaintiffs Properly Alleged Their Statutory Claims under California Consumer Protection Laws .............................. 28

      A.    The Complaint Sufficiently Alleged the "Free of" Claims on the Products Label Are Deceptive ...................................... 33

      B.    The Complaint Sufficiently Alleged the "Free of" Claims on the Products Label Omitted Material Facts that Render Them Misleading .................................................................... 36

      C.    The Complaint Sufficiently Alleged Measurable Factual Claims That Are Not Puffery ..................................... 42

CONCLUSION....................................................................... 47

i

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 27, 28

*Bell v. Publix Super Market, Inc.,* 982 F.3d 468 (7th Cir. 2020) ........passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................26, 28, 30

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) .................................................................... 43

*Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Services
   Inc.*, 911 F.2d 242 (9th Cir. 1990) ......................................................42, 44

*Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109 (S.D.N.Y.
   2019)........................................................................................................ 32

*Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019) .....................32, 38

*Hauter v. Zogarts*, 14 Cal. 3d 104 (Cal. 1975)............................................. 43

*In re Boston Beer Co.*, 198 F.3d 1370 (Fed. Cir. 1999)................................ 43

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ..................... 28

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ................................................ 34

*Maharishi Hardy Lechman Ltd. v. Abercrombie & Fitch Co.*,
   292 F. Supp. 2d 535 (S.D.N.Y. 2003) ....................................................... 42

*Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018)................................ 37

*McKinnis v. Kellogg USA*, No. 07-cv-02611-ABC-RCX,
   2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ......................................... 36

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ........passim

*Newcastle Indus., Inc. v. Ikon Office Solutions*,

513 F.3d 1038 (9th Cir. 2008) ................................................................. 43

*Pizza Hut, Inc. v. Papa John's International, Inc.*,
227 F.3d 489 (5th Cir. 2000)................................................................. 43

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ......................... 33

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)................................................................. 42

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ....................................... 27, 29

*Vitt v. Apple Computer, Inc.*, 469 F. App'x 605 (9th Cir. Dec. 21, 2011) .... 42

*Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456-SBA,
2010 WL 2673860 (N.D. Cal. July 2, 2010) ........................................... 36

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .............passim

## STATUTES

28 U.S.C. § 1291................................................................................. 5

28 U.S.C. § 1332 ............................................................................... 5

California's Consumers Legal Remedies Act,
CAL. CIV. CODE § 1770 *et seq.*..........................................................passim

California's False Advertising Law,
CAL. BUS. & PROF. CODE § 17500 *et seq.*...........................................passim

California's Unfair Competition Law,
CAL. BUS. & PROF. CODE § 17200 *et seq.*...........................................passim

## RULES

Federal Rule of Appellate Procedure 4........................................................ 5

Federal Rule of Civil Procedure 12 .....................................................passim

iii

Federal Rule of Civil Procedure 8....................................................27, 28, 30

Federal Rule of Civil Procedure 9.........................................................20, 22

## **INTRODUCTION**

Consumers of permanent hair dye products, like the Plaintiffs-Appellants Brown, Moore, and Sheffler ("Plaintiffs"), want to buy safer products than those historically sold, which typically contain ammonia and other harsh chemicals. Seeking to capitalize on this demand, Defendant-Appellee Madison Reed, Inc. ("Defendant" or "Madison Reed") labelled the front of its Madison Reed Hair Color Products (the "Products") with buzz words to attract consumers: "Free of ammonia, parabens, resorcinol, PPD, phthalates, & gluten." Defendant is not required by any regulation or law to make this "Free of" statement. Rather, Defendant does it as a marketing ploy that works and the Products have become one of the fastest selling hair dyes.

The reason that Defendant's marketing works is because, for consumers who dye their hair, the "Free of" representation has a specific meaning and indicates the Product is safer than traditional hair dye products. Ammonia, resorcinol, and PPD are viewed by reasonable consumers of permanent hair color products as unsafe to human health and bad for hair, and Defendant routinely touts as much in order to sell its alternative formula. Unfortunately, unbeknownst to consumers, Defendant replaced ammonia, resorcinol, and PPD with chemicals that are just as unsafe or worse than what they replaced. In other words, the purportedly

1

safer Product is not safer and causes as much, if not more, damage to hair than the ammonia, resorcinol, and PPD in traditional hair color formula.

Since 2016, Madison Reed has engaged in an advertising campaign that has centered on having created hair color products that are safer than traditional ones. Indeed, Defendant's now famous taglines, that the Products are "free of ammonia...." "free of harsh ingredients," and "full of good stuff" are delivered incessantly during commercial breaks on satellite radio and via other forms of media. Although Defendant is on notice that its customers routinely complain that they have been deceived by Defendant's advertising, Defendant continues to engage in its misleading practices.

As discussed below, the Products are not "free of harsh ingredients" or "full of good stuff," and the reasonable consumer of permanent hair color lacks the knowledge or training to uncover these facts. For example, the Product replaced ammonia with ethanolamine, which is produced through a chemical reaction of ethylene oxide (a carcinogen according to the Environmental Protection Agency) with ammonia. Unfortunately, the Product's barely intelligible ingredient list does nothing to cure Defendant's deception because the reasonable consumer is not likely to know what this chemical is, let alone know that it replaced ammonia and is less healthy and causes more damage to hair.

The Second Amended Complaint (the "Complaint") set forth these unlawful acts and related legal claims in abundant detail. The District Court, however, dismissed Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), not because there were insufficient facts to explain Plaintiffs' claims but because the District Court Judge (who likely is not a user of permanent hair dyes for women) substituted his own interpretation for that of the Plaintiffs and other class members (who are users of permanent hair dyes for women) and held that "Free of Ammonia, parabens, resorcinol, PPD" does not imply the Products are safer than products with ammonia, resorcinol and PPD. This is reversible error, as the District Court Judge should not have substituted his own belief and experience (which likely never involved hair dyes for women) for that of the Plaintiffs and other class members quoted in the Complaint who do use permanent hair dyes for women and have experiences with hair dyes for women that the District Court Judge likely did not.

In addition, by engaging in subjective determinations about how consumers would/should interpret the "Free of" representation and by failing to interpret Defendant's other statements within the context in which they were made, the District Court found that Defendant's remaining statements, which appear in frequent advertising and on Defendant's

website, were either not deceptive as a matter of law or were not actionable puffery.

In making the above rulings, the District Court misapplied Rule 12(b)(6). The court was not free to disregard the Complaint's well-pled facts and the experiences of the Plaintiffs. The allegations in the Complaint are not mere conclusions; they are detailed factual allegations the court was required to accept and construe in the light most favorable to Plaintiffs. Indeed, Plaintiffs and other women of permanent hair dyes – who are Madison Reed's targeted audience and the quintessential reasonable consumers of permanent hair color products (of which, the District Court Judge likely is not) – adequately pled they were deceived by the Product's "Free of" representations on its front label, as well as Defendant's advertising. Importantly, deceptiveness is a question of fact, and a reasonable jury could readily find that Plaintiffs were deceived by Defendant's conduct.

The District Court also failed to follow governing authority when it found that the front label's "Free of" representations were not misleading because they were cured by the ingredient list. As held by the Ninth Circuit (as well as the First, Second, and Seventh Circuits), an ingredient list found on a back/side panel of a product's label cannot be used to sanitize deceptive representations on the front.

4

As discussed below, Defendant's motion to dismiss should have been denied, and the District Court's order granting the motion should be reversed.

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of California had original subject matter jurisdiction over this putative class action under 28 U.S.C. § 1332(d)(2) because: (i) at least one member of the plaintiff class is a citizen of a State different from the defendant, as Plaintiff Scheffler is a citizen of Ohio (2-ER-0071 ¶ 29) and Defendant is a Delaware corporation with its principal place of business in California (*id.* ¶ 31); and (ii) the matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs (2-ER-0070 ¶ 26). 2-ER-0112 ¶ 111.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because Plaintiffs appeal from the District Court's order granting Defendant's motion to dismiss the Complaint with prejudice dated August 18, 2022. 1-ER-0002–21.

Plaintiff filed a notice of appeal on September 16, 2022 (2-ER-0062–63), within 30 days after the District Court entered the August 18, 2022, order. Thus, the appeal is timely under Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.

## QUESTIONS PRESENTED

1. Did the Complaint plausibly allege that the "Free of" representations on the front label of the Products are likely to deceive reasonable consumers of permanent hair color products where: (i) reasonable consumers of permanent hair color products interpret these "Free of" representations to mean that the Products are better for hair and less harmful to health than products containing those chemicals; (ii) ammonia was replaced with ethanolamine, a chemical that is produced through a chemical reaction of a carcinogen with ammonia, and studies have shown that it causes 85% more damage to hair than ammonia and also causes hair loss (including in Plaintiffs), (ii) resorcinol was replaced with 2-methylresorcinol, which is recognized by scientists as a potential endocrine disruptor, (iii) PPD (an ingredient that causes an allergic reaction in many consumers) was replaced with PTDS, an ingredient that still causes an allergic reaction in 1 out of every 2 consumers that are allergic to PPD, (iv) the Product's packaging did not warn consumers that the removed chemicals were replaced with other chemicals that were just as unsafe and unhealthy or worse, (vi) the Product's packaging did not warn reasonable consumers of permanent hair color products of the risks associated with the replacement chemicals, and (vii) Plaintiffs' allegations adequately pled they were deceived

by Defendant's "Free of" representations displayed on the Products' front label.

2. Does precedent of this Court allow Defendant to rely upon an ingredient list found on the side panel of the Products to correct the misleading "Free of" ammonia, resorcinol, and PPD representations that appear on the Products' front label?

3. Does the Complaint sufficiently state claims for violations of California consumer protections laws where Defendant's marketing statements caused reasonable consumers to purchase more expensive hair color products under the mistaken belief that Defendant made them safer by, among other things, having removed what Defendant affirmatively identified as certain "harsh" ingredients typically found in permanent hair color products, such as ammonia, resorcinol, and PPD, even though, unbeknownst to consumers, those ingredients were replaced with chemicals that scientific studies have shown are just as bad, or worse, for hair and human health?

## STATEMENT OF THE CASE

### I. Relevant Facts

The relevant facts are set forth in the Complaint. 2-ER-0064-0123. The Complaint contains 60 pages of detailed allegations about the Products at issue, including their ingredients, labeling, advertising, as well as statements

by Defendant on its website and countless publicly-available consumer reviews of the Products, which complain about deception. Plaintiffs summarize their key allegations below.

To capitalize on consumers' growing interest in and demand for healthy personal care products, Defendant uniformly labels the Products with the words "Free of ammonia, parabens, resorcinol, PPD, phthalates, & gluten" on the front of the label. 2-ER-0073–74 ¶ 40. Two images of the front label of the Product are shown below. The first image is of the entire label while the second image shows a magnified version of the "Free of" claims:





Reasonable consumers of permanent hair color products for women view these "Free of" representations as having a positive meaning. For example, the missing ingredient "ammonia" is known to be unhealthy. 2-ER-0065-66 ¶¶ 5-6. PPD's removal is also welcome news because it tends to cause an allergic reaction in many users. *Id.* ¶ 6. However, Defendant fails to disclose that it replaced these ingredients with ingredients that are just as bad, or worse, than the ones it touted had been removed. *Id.*

Defendant's "Free of" representation is rendered even more egregious when one considers that reasonable consumers of hair color products lack the knowledge or training to know that the removed ingredients would need to be replaced with something else for the hair dye to work. 2-ER-0067-68 ¶¶ 13-14. But even if reasonable consumers did know that hair dyes required

replacement chemicals, they lack the knowledge and training to know the names of any of the potential replacements, as well as whether the replacements are safer than what they have replaced. *Id.* For these reasons, the ingredient list for this Product is useless for purposes of curing Defendant's deceptive "Free of" statements on the Products' front label. 2-ER-0067-68 ¶¶ 12-14.

Defendant's other advertising of the Products is also misleading. Indeed, Defendant made numerous statements, via various media outlets and on its website, that led consumers to believe that the Products were safer and/or healthier than other permanent hair color products. In discussing how it formulated the Products, Defendant states that it "started by ***throwing out all of the usual harsh ingredients***, [and ***packed the Products] with all the things healthy hair loves***." 2-ER-0072 ¶ 36 (emphasis in original). Indeed, Defendant's founder Amy Errett states she founded Madison Reed to "***help women and save their lives***" from the "***harsh chemicals***" typically found in hair color products. 2-ER-0072-73 ¶ 37 (emphasis in original). She further stated "one of the big purpose-driven pieces of Madison Reed is a set of ingredients in our hair color that I believe ***you could feel good about because we've taken out many of the harsh chemicals***." *Id.* (emphasis in original). This messaging is driven

home on Madison Reed's website where it lists the purported "good" ingredients under the heading "**Ingredients With Integrity**." *Id.* (emphasis in original).

Indeed, for years now, Madison Reed has advertised that its Products are free of the "harsh ingredients" traditionally found in hair color products. 2-ER-0072-73 ¶¶ 36-37, 2-ER-0075 ¶ 44, 2-ER-0079 ¶ 49. Madison Reed's marketing and advertising of the Products almost exclusively focused on the fact that they were free of, among other things, ammonia, resorcinol, and PPD. *See* 2-ER-0072 ¶ 34; 2-ER-0074-75 ¶¶ 41, 43; 2-ER-0079 ¶ 49; 2-ER-0082 ¶ 52. These chemicals are commonly viewed by reasonable consumers of hair color products as "bad" or unsafe for application on hair and the human body. 2-ER-0070-71 ¶ 28, 2-ER-0071 ¶ 29, 2-ER-0103 ¶ 87, 2-ER-0106 ¶ 92.

Defendant makes numerous misleading representations about the safety and healthfulness of the Products on its website, which arguably is where most consumers research products before purchase. For example, on the Madison Reed's website, Defendant boasts about having removed "harsh" ingredients like ammonia, resorcinol, PPD, parabens, phthalates, etc. from the Products and replaced them with good ones. 2-ER-0075 ¶ 43.

On another webpage on its site, Defendant states "When it comes to

11

our formulas, we don't mess around. We're as passionate about what we put into our formulas as what we leave out." 2-ER-0075 ¶ 44. Boasting once again that the Products abide by strict European Union (EU) safety standards for hair color formulation, Defendant states that it "***will never use certain potential ingredient offenders in our formulas***," as well as that it is "***shout-it-from-the-rooftops proud to use ingredients that nourish your hair.***" (emphasis in original). 2-ER-0075 ¶ 44.

Defendant assures consumers that the Products are "***non-damaging to hair and . . . non-damaging to scalp health***." *Id*. Again, Defendant educates consumers about the fact that, among other "bad" ingredients, the Products are free of the ingredients: ammonia, resorcinol, and PPD. *Id*.

In a blog post by Defendant on October 7, 2020, titled "Ingredients That Love Your Hair Back," and in more posts since then, Defendant reinforces its healthfulness messaging and continues to actively conceal the adverse reactions caused by the Products, with the following:

> This Saturday, October 10th, is National Love Your Hair Day, so we wanted to take a minute to shout out our favorite hair-loving ingredients that make our formulas so special. Yes, our hair color is free of ammonia, PPD, resorcinol, parabens, phthalates, gluten, SLS, and titanium dioxide—but we're as passionate about what we put into our color as what we leave out.
>
>       \*    \*    \*

***We opt for nourishing ingredients instead***, so after you use our Radiant Hair Color, your hair won't feel dry or straw-like the way it sometimes can after coloring. No thank you! Your strands will actually look and feel healthier, thanks to three hero ingredients—keratin, argan oil, and ginseng root extract.

2-ER-0079 ¶ 49.

Shown below, is the front page of an advertisement Defendant sent consumers via U.S. Mail around January 2021, with its tagline, "**GOODBYE HARSH INGREDIENTS\***," "\*Free of ammonia, PPD, resorcinol." 2-ER-0079-80 ¶ 51.



Finally, as shown below in a screenshot taken of Defendant's webpage as it existed in 2016, Defendant's widespread, uniform healthful campaign has been going on for at least six years now. 2-ER-0083.

## Ingredients with Integrity

—

We offer luxurious at-home hair color with a low chemical profile. It's as simple as that. We design our products with ingredients that nurture your hair and avoid those that don't. Our Italian hair color-makers bring a detailed eye and generations of experience to their craft. The result is innovative color made with an unwavering commitment to quality that meets the strict safety standards set by the European Union (EU), which bans chemicals not proven to be safe. We can all appreciate that.

In the above statement, Defendant represents that it "design[s its] products with ingredients that nurture your hair and avoid those that don't," Importantly, while there may have been some stylistic/aesthetic changes to its advertising campaign over time, Defendant's central messaging that the Products are safer than other permanent hair dyes **has never changed.** *Id.*

The Products' packaging reinforces Defendant's pervasive marketing message that the Products are gentler, safer and healthier, and free of "harsh" ingredients, by placing a promise on the front label of the Products in white letters appearing against a dark background, that among other things, it is "Free of ammonia, parabens, resorcinol, PPD, phthalates, & gluten." 2-ER-0074 ¶ 40.

Unfortunately for consumers, the Products are, in fact, not "non-

damaging" to hair or the scalp and are not "free" of "harsh ingredients" such as ammonia as represented. 2-ER-0083 ¶ 54. The Products have ingredients that damage users' scalp and hair, cause hair loss. The Products have likely injured tens of thousands of consumers. *Id*. ¶ 55.

While touting ""Free of ammonia, parabens, resorcinol, PPD, phthalates, & gluten," 2-ER-0073–74 ¶ 40, the Products contain a replacement for ammonia called ethanolamine that is known to cause hair loss and more damage to hair than ammonia, as evidenced by studies performed on it and as experienced first-hand by Plaintiffs. 2-ER-0084 ¶¶ 58-62. Indeed, ethanolamine is created utilizing a process that uses the "harsh" ingredient ammonia that Defendant states its Products are "free of." 2-ER-0084 ¶ 58.

Plaintiffs purchased the Products relying on Madison Reed's deceptive representations that they were better for their hair and less harmful to their health. 2-ER-0070-71 ¶¶ 28-29. Plaintiffs alleged Madison Reed violated the California's Consumer Legal Remedies Act ("CLRA"), Civil Code sections 1750 *et seq*.; California's False Advertising Law ("FAL"), Business and Professions Code sections 17500 *et seq*.; and California's Unfair Competition Law ("UCL"), Business and Professions Code sections 17200 *et seq*. 2-ER-0115-0122 ¶¶ 131-182. Plaintiffs filed this action on behalf of a putative

nationwide class of purchasers to enjoin Madison Reed from deceptive marketing and to recover monetary damages. *Id.*

Defendant profits enormously from its deceptive labeling of the Products, and its "Free of" representations were designed to, and did, deceive consumers including Plaintiffs into paying a premium price for the Products. *See* 2-ER-0070-71 ¶¶ 28-29. Had Defendant not made the false and misleading "Free of" representations, Plaintiff and the class members would not have been willing to pay the same amount for the Products they purchased and/or would not have been willing to purchase the Products at all. *Id.*

Plaintiff Moore, a resident of Altadena, California, purchased the Products around February 2020, at an Ulta Beauty Store in Pasadena, California. 2-ER-00127 ¶ 16. Plaintiff Moore purchased and paid a price premium for the Products because she wanted to use personal care products that were safer, and Defendant's Products were labeled that they were free of the harsh ingredients ammonia, resorcinol, and PPD. *Id.* She relied on the deceptive labeling in making her purchases and was misled into thinking the Products were, in fact, safer. *Id.* Had she known at the time that the Products were not, in fact, safer than products that contained those ingredients, she would not have purchased the Products or paid a premium price for them.

16

*Id.* In addition, after using Defendant's hair color product, Plaintiff Moore's scalp became irritated, she suffered hair loss, and the remaining hair on her head turned dry and brittle. *Id.*

Plaintiff Brown, a resident of Novato, California, purchased the Products online between 2016 and 2019 through Defendant's website. 2-ER-0070-71 ¶ 28. Plaintiff Brown purchased and paid a price premium for the Products because she wanted to use personal care products that were safer, and Defendant's Products were labeled that they were free of the harsh ingredients ammonia, resorcinol, and PPD. *Id.* She relied on the deceptive labeling in making her purchases, as well as Defendant's representations on its website, and was misled into thinking the Products were, in fact, safer. *Id.* Had she known at the time that the Products were not, in fact, safer than products that contained those ingredients, she would not have purchased the Products or paid a premium price for them. *Id.* In addition, after using Defendant's hair color product, Plaintiff Brown's hair turned brittle, and she began suffering hair loss. *Id.* After discontinuing the use of the Product, her hair loss ceased. *Id.*

Plaintiff Sheffler, a resident of Defiance, Ohio, purchased the Products online around February 2021 through Defendant's website. 2-ER-0071 ¶ 29. Plaintiff Sheffler purchased and paid a price premium for the Products

because she wanted to use personal care products that were safer, and Defendant's Products were labeled that they were free of the harsh ingredients ammonia, resorcinol, and PPD. *Id.* She relied on the deceptive labeling in making her purchases, as well as the Defendant's representations on its website, and was misled into thinking the Products were, in fact, safer. *Id.* Had she known at the time that the Products were not safer than products that contained ammonia, resorcinol, and PPD, she would not have purchased the Products or paid a premium price for them. *Id.* However, after using only two bottles of the Product, Plaintiff Sheffler suffered scalp irritation and hair loss. *Id.* The irritation lasted two months. *Id.*

## II.    Procedural History

Plaintiffs Brown and Moore filed the original complaint on February 19, 2021. 2-ER-0152-176. In the complaint, Plaintiffs Brown and Moore alleged claims on behalf of a nationwide Class (2-ER-0165 ¶ 52) for violation of the CLRA (2-ER-0167-170 ¶¶ 61-85); FAL (2-ER-0170–171 ¶¶ 86-96); and UCL (2-ER-0171-173 ¶¶ 97-113).

On June 11, 2021, Defendant moved to dismiss for failure to state a claim and for failure to plead with particularity pursuant to Federal Rule of Civil Procedure 9(b), and the parties subsequently fully briefed the motion. *See* 2-ER-0093–94. The District Court held a hearing on the motion on

August 18, 2021. 2-ER-0095.

On August 30, 2021, the District Court issued an order granting the motion with leave to amend on the ground that the complaint failed to state a claim. 1-ER-0038-60. First, the court held the complaint did not sufficiently identify (i) the specific statements that each Plaintiff relied upon and (ii) the timing for when they viewed those statements. 1-ER-0054-56. Second, the District Court rejected application of the ruling in *In re Tobacco II Cases*, 46 Cal. 4th 298 (N.D. Cal. Feb. 8, 2021), which exempts a plaintiff from having to plead individual reliance when misleading statements are made as part of a long-term advertising campaign. 1-ER-0057-58.

Plaintiffs Brown and Moore then filed an amended complaint on September 29, 2021. 2-ER-0124-151. In the amended complaint, Plaintiffs Brown and Moore again alleged claims on behalf of a nationwide Class (2-ER-0140-41 ¶ 61) for violation of the CLRA (2-ER-0142–46 ¶¶ 69-93), the FAL (2-ER-0146-47 ¶¶ 94-104), and the UCL (2-ER-0147-50 ¶¶ 105-20).

On November 12, 2021, Defendant again moved to dismiss for failure to state a claim and for failure to satisfy Rule 9(b), and the parties finished fully briefing the motion on January 7, 2022. *See* 2-ER-0181-82. The District Court held a hearing on the motion on January 26, 2022. 2-ER-0182-83.

On January 31, 2022, the District Court granted the motion on the ground that the amended complaint failed to state a claim for relief for several reasons. 1-ER-0002–03. First, with respect to Plaintiff Moore's allegations concerning the Products' front label, the court held that label's "Free of" representations were not deceptive despite her allegations that she had been deceived by them. 1-ER-0027–28. The court also held that Ms. Moore had adequately shown that Defendant had a duty to disclose the purported safety hazard. 1-ER-0028-29. However, the court found that Defendant's "Free of" statement on its labeling were not misleading because the replacements for ammonia, resorcinol, and PPD were disclosed in an ingredient list on the side of the Products' box. 1-ER-0029. This claim was dismissed without leave to amend. *Id.*

The court also dismissed Plaintiff Brown's claims concerning (i) the numerous false and misleading statements made by Defendant during a years-long, widespread advertising campaign and on its website and (ii) Defendant's numerous omissions regarding the Products' unsafe replacement ingredients. 1-ER-0030–34. Specifically, with respect to Defendant's false and misleading statements, the court found that the number of statements alleged to be misleading by Plaintiff Brown, which stood at eight, and the over 3 years' timeframe over which she saw those,

made it difficult to ascertain what Plaintiff Brown relied upon in purchasing the Products and how those statements might be fraudulent. 1-ER-0030-33. The court also rejected Plaintiff Brown's argument that she need not plead individual reliance under *In re Tobacco II Cases* and its progeny. *Id.*

With respect to Plaintiffs' omissions claim, the court dismissed those on grounds similar to its dismissal of Plaintiffs' allegations concerning Defendant's false and misleading statements. Specifically, the District Court stated:

> Simply put, Brown has cast too wide a net to make this determination. It is true that Brown need not provide a specific time, place, or content of the purported omission. But her claims, as pleaded, do not meet even the lower threshold. The alleged omissions span a three-year period. Taken with the number of statements, and the evolving nature of the website where she saw them, one cannot ascertain under what conditions other consumers would have potentially come across any omissions.

1-ER-0034.

Plaintiffs Brown and Sheffler then filed the second amended complaint (which is the operative complaint and, accordingly, defined above as "Complaint") on February 21, 2022. 2-ER-0064-123. In the Complaint, Plaintiffs again alleged claims on behalf of a nationwide Class (2-ER-0111-12 ¶ 110) for violation of the CLRA (2-ER-0115–18 ¶¶ 131-55), the FAL (2-ER-0118-19 ¶¶ 156-66), and the UCL (2-ER-0120-22 ¶¶ 167-82).

On April 20, 2022, Defendant again moved to dismiss for failure to state a claim and for failure to satisfy Rule 9(b), and the parties finished fully briefing the motion on June 29, 2022. *See* 2-ER-0183-84. The District Court held a hearing on the motion on July 13, 2022. 2-ER-0184.

On August 19, 2022, the District Court granted the motion on the ground that the Complaint failed to state a claim for relief. 1-ER-0002–21. With respect to Plaintiffs' allegations concerning the Products' front label "Free of" representation, the District Court found that the statements are true and, in any event, do not make any assertions that the Products are healthier, safer or gentler as alleged by Plaintiffs. 1-ER-0016-17. The District Court then held that Defendant's other misrepresentations about the Product, *e.g.*, "Ingredients with Integrity," were inactionable puffery. 2-ER-0014-15.

With respect to Plaintiffs' allegations that Madison Reed had omitted material information concerning the virtually unknown harmful chemicals it used to replace the "harsh ingredients" it removed from the Products, the District Court concluded that Plaintiffs had adequately shown that that Defendant had a duty to disclose the purported safety hazard. 1-ER-0020. Despite this, the court found that Defendant's "Free of" statement on its front labeling was not misleading because their replacements were disclosed in an

ingredient list on the side of the Products' box. *Id*. The District Court dismissed the Complaint with prejudice. 1-ER-0020-21.

On September 15, 2022, this appeal followed. 2-ER-0010–11.

## SUMMARY OF THE ARGUMENT

Plaintiffs properly alleged a clear misrepresentation claim: Defendant misleads reasonable consumers of permanent hair color products into believing that the Products are safer and healthier because they are "Free of" ammonia, resorcinol, and PPD but, in fact, they are not because those ingredients have been replaced with chemicals that are just as bad, or worse, to hair and human health. For the same reasons, Defendant's statements that the Products are free of "harsh ingredients," "full of good stuff," "made with ingredients you can feel good about," among others, also mislead reasonable consumers looking for safer hair dyes.

The District Court Judge, who is not the target audience for women's hair dye products, substituted his own personal view for that of the Plaintiffs and held that there was nothing deceptive to a reasonable consumer of hair dye products about conspicuously labeling that the Products are "Free of ammonia," a benefit incessantly touted by Defendant, even though ammonia's replacement, ethanolamine, is far worse for hair and human health than ammonia.

Nor did the District Court see anything deceptive about conspicuously labeling that the Products are "Free of PPD," even though its replacement PTDS causes an allergic reaction in one out of every two people that are allergic to PPD. In other words, a consumer allergic to PPD looking to avoid an allergic reaction will likely buy the Products thinking it is safe to use because PPD has been removed. It is only after suffering an allergic reaction to the Product that unsuspecting consumers would find out Defendant replaced PPD with another chemical to which they are likely allergic.

Finally, resorcinol was replaced with 2-methylresorcinol, a chemical that can disrupt the thyroid's function. Thus, Defendant's removal of resorcinol only gives consumers a false sense of hope that the product is safer when it is not.

Plaintiffs also properly alleged an omission claim: Defendant failed to disclose to unsuspecting consumers that ammonia, resorcinol, and PPD were replaced with ingredients that were not better for hair or less harmful to human health. Significantly, although the District Court agreed that Plaintiffs plausibly pleaded that the replacement chemicals pose a safety hazard that imposed upon Madison Reed a duty to disclose, the court found Defendant was not liable because it disclosed in the ingredient list that the Products contained ethanolamine, 2-methyresorcinol and PTDS (the

removed ingredients' replacements). In so finding, the District Court failed to follow governing authority from the Ninth Circuit under which the ingredient list on a different panel of a product's packaging may not be used to correct deceptive representations and omissions on the front label. The District Court also failed to follow its own ruling that Defendant had a duty to disclose the safety hazards posed by the replacement ingredients used in the Products.

Deceptiveness is a question of fact, and a reasonable jury could readily find that Defendant's conduct creates precisely the false impressions that Plaintiffs alleged and that, indeed, are essential to Defendant charging a significantly higher price for hair color products that are supposedly "Free of ammonia, . . . resorcinol, PPD" than what consumers would pay if they knew that these ingredients were replaced with ingredients that are no safer. Despite Plaintiffs' allegations to the contrary, the District Court found that "Free of ammonia" did not imply "healthier" or "safer," and interpreted words like "Ingredients with Integrity" in a vacuum and in a way that favored Madison Reed, instead of drawing inferences in Plaintiffs' favor. Plaintiffs' allegations are not mere conclusions or labels; they are well-elaborated factual claims that the District Court was required to accept.

District courts are required to accept factual allegations as true at this

stage. *Twombly* and its progeny do not require detailed evidentiary pleading. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). They merely prevent plaintiffs from asserting the bare elements of a claim and legal conclusions without factual details. Nor does *Twombly*'s plausibility standard allow courts to dismiss claims based on skepticism about the facts alleged or because the court finds contrary inferences more reasonable. The District Court strayed from these core limits on its power to dismiss pleadings, disregarding Plaintiffs' substantially detailed factual allegations and drawing inferences against Plaintiffs rather than in their favor. The District Court should have denied Defendant's motion to dismiss, and this Court should remand this case with instructions to do so.

**ARGUMENT**

## I.    The Standard of Review Is De Novo

This Court reviews a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022).

## II.   The District Court Did Not Have License to Choose Which Facts to Believe

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). As the United State Supreme Court has

interpreted Rule 8(a):: "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to "accept[] as true all well-pleaded allegations of material fact and constru[e] those facts in the light most favorable to the non-moving party." *Ernst & Haas Mgmt. Co., Inc.*, 23 F.4th at 1199; *accord Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) ("*Mars Petcare US, Inc.*"). "[D]ismissal is affirmed only if it appears beyond doubt that [the] plaintiff can prove no set of facts in support of its claims which would entitle it to relief." *Ernst & Haas Mgmt. Co., Inc.*, 23 F.4th at 1199. "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Id.* The pleading need only "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Rule 8 is not a docket clearing device. "The plausibility standard is not akin to a 'probability requirement' . . . ." *Iqbal*, 556 U.S. at 678. On the contrary, "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556; *accord In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (finding that trial court's "incredulity" was not a proper ground for granting a motion to dismiss and faulting the court for being "unwilling to accept" allegations as true).

Unfortunately, the District Court did not adhere to these rules. Instead of viewing the alleged facts in the light most favorable to Plaintiffs and drawing reasonable inferences in Plaintiffs' favor, the District Court found the factual allegations unpersuasive and dismissed them. When the proper standard is applied, however, it is clear that Plaintiffs' claims were adequately pled, and the District Court should have denied the motion to dismiss.

## III. Plaintiffs Properly Alleged Their Statutory Claims under California Consumer Protection Laws

Plaintiffs alleged Defendant's deceptive labeling that the Products are "Free of ammonia, . . . resorcinol, PPD, " as well as its "free of harsh ingredients" and "full of good stuff" promotion, violate three related California consumer protection statutes: the UCL, the FAL, and the CLRA. 2-ER-0115-23. Violation of each is tied to Defendant's false and misleading labeling and advertising of the Products. The question presented was the same for each: whether Plaintiffs plausibly pled that Defendant made

material misrepresentations and omissions that were likely to deceive reasonable consumers of permanent hair color products, acting reasonably in the circumstances, when it marketed and sold the Products. *See Mars Petcare US, Inc.*, 966 F.3d at 1017; *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

When Plaintiffs' allegations are accepted as true, construed in the light most favorable to Plaintiffs, and reasonable inferences are drawn therefrom, it is clear their claims are properly pled. Plaintiffs have sufficiently alleged the "underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *See Starr*, 652 F.3d at 1216. As discussed in detail above, Defendant represented that the Products were safer than other hair color products because they were "Free of" ammonia, resorcinol, and PPD. Plaintiffs alleged that these representations, which appear on the Products' front label, led them to believe that the Products were safer and healthier than traditionally-formulated products. In truth, the ammonia, resorcinol, and PPD removed from the Products were replaced with chemicals that were just as bad or worse than those they replaced. For example, ammonia's replacement in the Madison Reed Products – ethanolamine – is known within the scientific community to cause hair loss, which, in fact, is what happened to the Plaintiffs as they all suffered loss of hair. This is not merely

a "formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. This detailed pleading is in full compliance with Rule 8(a).

The District Court simply did not accept Plaintiffs' allegations as it should have. The court's dismissal of Plaintiffs' claims rested on two grounds. First, the court refused to credit Plaintiffs' allegations that Madison Reed's "Free of" claims duped consumers into believing the Products are safer than other permanent hair color products, when in fact they are not. According to the court, nothing about "the statements 'free of' ammonia, rescorinol [and] PPD,' and 'Ammonia Free' . . . make any assertions about the health, safety, or gentleness of the products." 1-ER-0016-17.

Second, the court departed from well-established Ninth Circuit authority and held that the ingredient list on the side of a consumer product may correct deceptive representations on the front. Specifically in *Williams*, the Ninth Circuit held that:

> The district court suggests that no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified. ***We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.***

Williams, 552 F.3d at 939 (emphasis added).

However, in direct contradiction of the governing authority of *Williams,* the District Court did here in this matter regarding the Madison Reed Products what the Ninth Circuit said it could not do. Specifically, the District Court held that:

> Although [Plaintiffs] have plausibly pleaded that the replacement chemicals pose a safety hazard, imposing upon Madison Reed a duty to disclose, Madison Reed *did* disclose that its products contained ethanolamine, 2-methylresorcinol and PTDS. The ingredient list included on the box of products and on the website state them.

1-ER-0020 (citations omitted). This directly contradicts the Ninth Circuit authority of *Williams* and imposes on consumers a level of scientific knowledge akin to that of a chemist (or an erudite judge sitting in chambers armed with scientific and scholarly works) that is impractical, unreasonable, and in contradiction of consumer protection laws. As explained by the Seventh Circuit when examining a similar situation involving the consumer protection laws of California and similar states:

> The district court's dismissal erred by departing from the Rule 12(b)(6) standard and attributing to ordinary supermarket shoppers a mode of interpretation more familiar to judges trying to interpret statutes in the quiet of their chambers....Under the district court's ambiguity rule, as a matter of law, a front label cannot be deceptive if there is any way to read it that accurately aligned with the back label. And this would be so even if the label actually deceived most consumers, and even if it had been carefully designed to deceive them.

*      *      *

> Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product. '[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures … . Nor does the law expect this of the reasonable consumer.'

*Bell v. Publix Super Market, Inc.,* 982 F.3d 468, 476 (7th Cir. 2020) (quoting *Danone, US, LLC v. Chobani, LLC,* 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019)); *see also Dumont v. Reily Foods Co*., 934 F.3d 35, 40 (1st Cir. 2019) (reversing dismissal of similar deceptive labeling claim: "Our dissenting colleague envisions a more erudite reader of labels…armed perhaps with several dictionaries, a bit like a federal judge reading a statute."). In sum, an allegation of deceptiveness is not a conclusion or question of law that the court can simply reject on a motion to dismiss based on the individual judge's evaluation of whether the defendant's alleged misrepresentation is deceptive. Rather, under the reasonable consumer standard, "'[w]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer' or motions to dismiss." *Mars Petcare US, Inc.*, 966 F.3d at 1017 (quoting *Williams*, 552 F.3d at 938); *see also Dumont* 934 F.3d at 41 ("[W]e think it best that six jurors, rather than three judges, decide on a full record whether the challenged label 'has the capacity to mislead'

reasonably acting...consumers."); *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236 (Ct. App. 2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer."). The reasonable consumer standard "raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Here, there were ample facts alleged from which a trier of fact could find Defendant's practices deceptive. The District Court erred in ruling otherwise on a motion to dismiss.

### A. The Complaint Sufficiently Alleged the "Free of" Claims on the Products Label Are Deceptive

The District Court held the Complaint did not sufficiently allege the "Ammonia Free" and "Free of" ammonia, resorcinol, and PPD representations are deceptive because these statements "do not make any assertions about the health, safety, or gentleness of the products." 1-ER-0020. The court further found that "these statements would not cause a reasonable consumer to believe that Madison Reed's products are healthier, safer than others, let alone a significant portion of the general public or targeted consumers." 1-ER-0021. To reach this conclusion, the court erred by failing to credit the well-pled factual allegations of Madison

Reed's targeted consumers such as Plaintiffs. The District Court Judge, who presumably is not a consumer of permanent hair coloring products for women, discounted the allegations of Plaintiffs, who are consumers of the hair coloring products for women. The District Court also erred in that it failed to follow the standard for the consumer protection statutes at issue which "***prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.***" *Williams*, 552 F.3d at 938 (emphasis added) (quoting the California Supreme Court in *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).

The Complaint alleged clearly that the essence of Defendant's deception is the uniform "Free of ammonia, resorcinol [and] PPD" representations on the front of the Product packaging. Critically, the Complaint alleged reasonable consumers of the Products understand this "Free of" communication to mean the Products were better for hair and less harmful to health than traditional hair color products. *See* 2-ER-0070-71 ¶¶ 28-29, 2-ER-0100-06 ¶¶ 80-93. If there is any doubt that is the case, the Complaint cites the experiences of dozens of Madison Reed customers, publicly available online on Defendant's own website and consumer review

cites, complaining that they were deceived by Defendant's messaging into believing the products were "safer" and "healthier" when they were not. 2-ER-0087-99 ¶¶ 71-79. The "Free of" claims and product marketing are false and misleading because ammonia, resorcinol, and PPD were replaced with chemicals that are just as hazardous, or even more so, than the ingredients they replaced. Indeed, as held by the District Court twice now, the Complaint plausibly pled that the replacement chemicals posed a safety hazard that Defendant had a duty to disclose to consumers. 1-ER-0020, 1-ER-0028-29.

Plaintiffs have not simply offered a generic conclusion that the Product labeling is deceptive. Rather, they have alleged specific facts explaining how the labeling was deceptive to them, as the reasonable consumer of these types of products, and why the labeling caused them to pay higher prices compared to traditional hair color products. *See Williams*, 552 F.3d at 939. Plaintiffs alleged, with factual underpinning, what representations were made, what reasonable inferences follow from them for consumers, and why. The District Court was required to accept these allegations as true and view them in the light most favorable to Plaintiffs, irrespective of the District Court Judge's own personal subjective skepticism about them, as someone who likely is not a consumer of hair coloring products for women. *Ernst & Haas Mgmt. Co., Inc.*, 23 F.4th at 1199; *Mars Petcare US, Inc.*, 966 F.3d at 1016.

This case is not one of the rare cases in which the trial court may resolve the reasonable consumer inquiry as a matter of law. *See, e.g.*, *Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456-SBA, 2010 WL 2673860, at *4–5, *6 (N.D. Cal. July 2, 2010) (rejecting claim that label of "Cap'n Crunch" cereal containing "Crunch Berries" was deceptive because product did not derive nutrition from real berries or fruit); *McKinnis v. Kellogg USA*, No. 07-cv-02611-ABC-RCX, 2007 WL 4766060, at *3–5 (C.D. Cal. Sept. 19, 2007) (rejecting claim that brightly colored ring-shaped "Froot Loops" cereal label was deceptive because product did not contain actual fruit). Rather, where, as here, "a Plaintiffs' interpretation of a challenged statement is ***not*** facially illogical, implausible, or fanciful, then a court may ***not*** conclude that it is nondeceptive as a matter of law." *Bell,* 982 F.3d at 493 (emphasis added).

For all these reasons, this Court should reverse the District Court's holding that the Complaint did not adequately allege consumer deception.

### B. The Complaint Sufficiently Alleged the "Free of" Claims on the Products Label Omitted Material Facts That Render Them Misleading

The District Court's dismissal of Plaintiffs' omission claim is equally unsupportable for at least two reasons. The first reason is grounded in binding case law. Plaintiffs alleged that Defendant's "Free of ammonia, paraben, resorcinol, PPD" representation on the Products' front label was

misleading because Defendant omitted the material fact that ammonia, resorcinol, and PPD had been replaced with chemicals that were just as bad or worse than what they replaced. 2-ER-0070-71 ¶ 28, 2-ER-0071 ¶ 29, 2-ER-0103 ¶ 87. Instead of accepting these allegations as true, construing them in the light most favorable to Plaintiffs, and drawing all reasonable inferences therefrom, the District Court dismissed Plaintiffs' claim because the removed ingredients' replacements, ethanolamine, 2-Methylresorcinol and PTDS respectively, had been disclosed in the Products' ingredient list. However, this ruling flies in the face of Ninth Circuit precedent. Under that authority:

> [R]easonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box . . . certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams*, 552 F.3d at 939–40; *accord Bell*, 982 F.3d at 476 ("[A]n accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers."); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("We conclude that a

reasonable consumer should not be expected to consult . . . the side of the box to correct misleading information set forth in large bold type on the front of the box.").

Through the Products' front label, Defendant sends the message to its target audience, reasonable consumers of permanent hair color products like Plaintiffs, that the Products are better for hair and less harmful than competitor products that contain ammonia and other harsh chemicals. *See* 2-ER-0070-71 ¶¶ 28-29, 2-ER-0106 ¶ 93, 2-ER-0110 ¶ 101. Under *Williams* and *Mars Petcare US, Inc.*, Defendant may not mislead reasonable consumers into believing the Products are safer on the front label and then correct the deceptive statement by hiding in and ingredient list appearing on a side panel that the removed ingredients were replaced with more dangerous chemicals. *Williams*, 552 F.3d at 939–40; *Mars Petcare US, Inc.*, 966 F.3d at 1017. The District Court's ruling to the contrary was reversible error.

Finally, the Products' ingredient list is an inscrutable enumeration of long scientific and chemical names. *See* 2-ER-0107 ¶ 97. Again, the reasonable consumer here is not someone with an advanced understanding of chemistry; instead, she is the ordinary consumer of permanent hair color products. *See, e.g.*, *Dumont*, 934 F.3d at 40 (reversing district court

38

dismissal of deceptive labeling case, stating "[o]ur dissenting colleague envisions a more erudite reader of labels . . . a bit like a federal judge reading a statute."). By listing replacement ingredients that are virtually unknown to Madison Reed's target consumers, two of which bear names with zero resemblance to what it replaced, Defendant made it difficult, if not impossible, to determine that the "free of" ingredients were replaced with other, less safe chemicals. *See* 2-ER-0067-68 ¶¶ 13-14, , 2-ER-0107 ¶ 97.

In fact, even assuming someone standing in a store aisle could ever manage to achieve this herculean task, the consumer would then have to conduct additional research in order to determine whether the replacement chemical is safer or more harmful than the ingredient it replaced. Consumer protection laws, however, "do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Bell*, 982 F.3d at 476. "[A] parent walking down the [] aisle in a [retail] store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures . . . . Nor does the law expect this of the reasonable consumer." *Id.* (internal quotation omitted). The District Court's ruling relies on the premise that the reasonable consumer has a level

of sophistication and knowledge regarding chemistry that is much greater than the ordinary consumer. The District Court's conception of the reasonable consumer of hair color products contradicts the law.

Furthermore, even if applicable law had required that Plaintiffs needed to consult the ingredient list here, the list nevertheless fails to neutralize the false and misleading "Free of" claim. Indeed, as alleged in the Complaint, the reasonable consumer of permanent hair color products would ***never*** know, for example, that ammonia would be replaced with another chemical. 2-ER-0067 ¶ 13.[1] The reasonable consumer would also not know that ammonia's replacement in the Products would be ethanolamine; a chemical perhaps only known to chemists in the hair color industry. *Id.* Finally, the reasonable consumer would not know that ethanolamine: (i) is made from a process that uses ammonia and a carcinogen, (ii) causes hair loss and (iii) causes 85% more damage to hair than ammonia. *Id.* In fact, if it did, the reasonable consumer would probably stick with a much less expensive product that uses a traditional formula.

---

[1] The reasonable consumer would also have no clue what that replacement would be because ammonia in permanent hair color products could be replaced by several other chemicals than what Defendant uses, ethanolamine. 2-ER-0107 ¶ 95.

Finally, at the motion to dismiss stage, the likely impact of an ingredient list on a reasonable consumer is a factual issue, not determinable on the pleadings. *See Williams*, 552 F.3d at 938.

An additional reason why the District Court's dismissal was improper is supported by the District Court's own holding concerning the omission claim. Specifically, the District Court held that Plaintiffs "have plausibly pleaded that ***the replacement chemicals pose a safety hazard***, ***imposing upon Madison Reed a duty to disclose*** [the hazard]. . . ." 1-ER-0020 (emphasis added). However, the Products' packaging does not contain the safety hazard warning that the District Court held Madison Reed had a duty to disclose; that ethanolamine causes 85% more damage to hair than ammonia and that it also causes hair loss. Also, nowhere on the packaging does Defendant alert consumers that ethanolamine is created by a chemical reaction involving a carcinogen and ammonia. Defendant also fails to disclose the safety hazard that the replacement ingredients for ammonia, resorcinol, and PPD also pose, as the District Court found was required. For this reason also, the District Court's dismissal of Plaintiffs' omission claim is reversible error.

### C. The Complaint Sufficiently Alleged Measurable Factual Claims That Are Not Puffery

Puffery has been described in a variety of ways. An advertisement is puffery if it makes "outrageous generalized statements" or claims "that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Services Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (citation omitted). Puffing is "exaggerated advertising, blustering and boasting on which no reasonable buyer would rely . . . ." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). Puffery includes statements such as: "Less is More,"[2] "Most Original,"[3] "Compete at the Highest Level,"[4] "Best Beer in America,"[5] and "reliable," "high performance," or "high value."[6]

---

[2] *Southland Sod Farms*, 108 F.3d at 1145 ("Less is More" is generalized boasting on which no reasonable consumer would rely).

[3] *Maharishi Hardy Lechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 552 (S.D.N.Y. 2003) ("most original" was puffery because there is no way to prove that one pair of Abercrombie pants is more or less original than another pair of Abercrombie pants).

[4] *TYR v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 830 (C.D. Cal. 2010) (a general statement that Speedo's swimsuits are superior without reference to any specific attributes of the swimsuits was puffery).

[5] *In re Boston Beer Co.*, 198 F.3d 1370, 1372 (Fed. Cir. 1999) (simple claim of superiority is "trade puffery").

[6] *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. Dec. 21, 2011) ("high performance," "reliable," and "high value" are inherently vague and general terms, not factual statements capable of being proven false).

Context matters. A phrase that is puffery in one context may not be puffery in another. *See Pizza Hut, Inc. v. Papa John's International, Inc*., 227 F.3d 489, 499 (5th Cir. 2000). Decades ago, courts used to allow sellers considerable latitude to puff the virtues of their products. However, the modern "trend [is] toward narrowing the scope of 'puffing' and expanding the liability that flows from broad statements of manufacturers as to the quality of their products." *Hauter v. Zogarts*, 14 Cal. 3d 104, 112 (Cal. 1975). Accordingly, a "specific and measurable claim, capable of being proven false or of being reasonably interpreted as a statement of objective fact" is not puffery. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173 F.3d 725, 731 (9th Cir. 1999). "[U]ltimately, . . . [a] statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Newcastle Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008) (citing *Cook*, 911 F.2d at 245).

Notably, in *Williams*, the Ninth Circuit emphasized the importance of looking at the alleged misrepresentations in the context of the entirety of the packaging or set of representations about the product. *Williams*, 552 F.3d at 936. There, the plaintiff alleged that Gerber misrepresented its Fruit Juice Snacks for toddlers as "nutritious" when, in fact, the product contained no

fruit juice despite the packaging showing "images of oranges, peaches, strawberries, and cherries." *Id*. The Ninth Circuit found the claim that the products were "nutritious" may be puffery standing on its own, but, given the "context of this statement," found it was not puffery, noting that "[i]t is not difficult to choose statements, designs, and devices which will not deceive." *Id*. at 939, n.3 (emphasis added) ("[W]e decline to give Gerber the benefit of the doubt by dismissing the statement as puffery.")

The many statements Madison Reed made about the Products that served to reinforce the Products' safety and healthfulness messaging must be viewed through the lens mandated in *Williams*. Alongside its "Free of ammonia, parabens, resorcinol, PPD" representations, Madison Reed chose to claim the following on its website since at least 2015 with many of these statements remaining there to this day: the Products are "made with ingredients you can feel good about" (2-ER-0071-72 ¶ 33); the Products are made from the "first ever Smart 8-Free permanent hair color free of harsh ingredients: ammonia, paraben, resorcinol, PPD . . ." (*id*. ¶ 34); "We started by throwing out the usual harsh ingredients, instead Madison Reed is packed with all the things healthy hair loves" (*id*. ¶36); Madison Reed "will never use certain potential ingredient offenders in our formulas" and is "proud to use ingredients that nourish your hair" (*id*. ¶40); below the representation "Our

Promise" appeared the following, "We promise to only use ingredients with integrity. Everything we make is Smart 8-Free permanent hair color free of harsh ingredients…Instead, we're proud to use ingredients that nourish your hair." (*id.* ¶ 43); Madison Reed "will never use certain potential ingredient offenders in our formulas" and is "proud to use ingredients that nourish your hair," (*id.* ¶44); the Products are "dermatologist tested" to be "non-damaging to hair and . . . non-damaging to scalp health," (*id.* ¶ 46); "COLOR YOUR HAIR HEALTHY Free of harsh chemicals & full of nature nutrients," "HEALTHIER HAIR COLOR THAT WORKS," and "BETTER FOR YOU Ammonia, Resorcinol, and PPD-Free" (*id.* ¶ 80); "You deserve better ingredients and performance from your hair color. That's why we removed harsh chemicals, and infused our color with ingredients that improve performance, to make your hair look and feel beautiful." (*id.* ¶ 82).

Print, television, and radio ads made similar claims. In fact, the commercial that drove Plaintiff Sheffler to Defendant's website, and eventually to buy the Products, made the following representation: "Healthier Hair Color That Works." *Id.* ¶ 89.

The above deliberate statements are sufficient to establish that the misrepresentations at issue are not puffery. Indeed, when the above statements are introduced at trial alongside independent scientific evidence that prove that ammonia, PPD and resorcinol were replaced by chemicals that were just as bad or worse than what they replaced, a jury could reasonably find that Defendant had misled consumers to believe its Products were safer than competitor's products with these ingredients, when, in fact, that was untrue.

## CONCLUSION

Plaintiffs met their pleading burden. They respectfully request that this Court reverse the dismissal of their Complaint and remand with instructions to deny Defendant's motion to dismiss.

DATE: January 26, 2023                    Respectfully submitted,

**REESE LLP**

BY: */S/CARLOS F. RAMIREZ*
CARLOS F. RAMIREZ
*cramirez@reesellp.com*
MICHAEL R. REESE
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**REESE LLP**
GEORGE V. GRANADE
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

*Counsel for Plaintiffs-Appellants
and the Proposed Class*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-16415

I am the attorney or self-represented party.

**This brief contains** | 10,541 | **words,** including | 156 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [        ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Carlos F. Ramirez | **Date** | 01/27/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 22-16415

The undersigned attorney or self-represented party states the following:

( • )  I am unaware of any related cases currently pending in this court.

( )  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( )  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | /s/ Carlos F. Ramirez    **Date** | January 26, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17**                                                                                     *New 12/01/2018*